UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

ROBERT ARMISTEAD,

         Appellant,

         v.

NA-MOR INC.,
EUGENE P. O'DONNELL, JR.,

         Appellee.
_____

CIVIL ACTION

NO. 16-CV-12006-TSH

**MEMORANDUM AND ORDER ON APPEAL FROM BANKRUPTCY COURT**

**September 22, 2017**

**HILLMAN, D.J.**

      Appellant Robert Armistead, a Court Approved Creditor in the bankruptcy of Na-Mor, Inc. ("Debtor"), brings this appeal from an Order of the United States Bankruptcy Court for the District of Massachusetts dated September 22, 2016 ("Order"), denying Armistead's Motion to Show Cause as to Why this Court Should not Find O'Donnell in Contempt, Sanction Him, Order a New Corrective Accounting and Order O'Donnell to Place Missing Funds into Escrow with the Court ("Motion to Show Cause"). Armistead also argues that the that the Bankruptcy Court erred in denying his request for an Evidentiary Hearing on newly found evidence pursuant to Fed. R. Bankr. P. 2004. For the reasons outlined below, the Order of the Bankruptcy Court is affirmed.

**Background**

      On March 22, 2010, Na-Mor, Inc. filed a voluntary petition for bankruptcy relief under Chapter 11 of the U.S. Bankruptcy Code. *See* Voluntary Petition, Bankr. Case No. 10-41302,

1

Docket No. 1. This was later converted to a Chapter 7 petition on December 5, 2015 by the appointed Chapter 11 Trustee, Joseph Collins ("Collins"), who was then appointed Chapter 7 Trustee. Prior to the bankruptcy filing, Eugene O'Donnell ("O'Donnell") was appointed by Worcester Probate and Family Court as Receiver of Cynthia Dziurgot ("Cynthia")'s business interests, including Na Mor, Inc., in the context of divorce proceedings between Cynthia and John Farnsworth ("Farnsworth"). As part of this Receivership, O'Donnell sold personal and real property belonging to Cynthia, and distributed the proceeds in accordance with Orders from the Worcester Probate and Family Court. In one example, in the context of the divorce proceedings, O'Donnell was appointed Master by Worcester Probate and Family Court and ordered to sell Cynthia's personal property located at 75 Walnut St., Clinton, MA. He hired Skinner Auction house to conduct the auction in June 2009, which generated $16,729.60 in proceeds, all of which O'Donnell distributed to Attorney John Anastasi, counsel to Farnsworth.[1]

O'Donnell was also responsible for liquidating assets belonging to Na-Mor, Inc, and he filed the initial voluntary petition for Chapter 11 bankruptcy for Na Mor, Inc., in March of 2010. Per order of the Bankruptcy Court dated October 29, 2014, O'Donnell filed a "Final Accounting" on November 25, 2014. Bankr. Case No. 10-41302, Docket No. 600.

Robert Dziurgot ("Robert"), Cynthia's brother, is a court approved creditor of the Debtor, and Appellant Armistead is the assignee of Robert's interests.[2] Armistead claims that O'Donnell, in his role as Receiver, sold property belonging to the Debtor and misappropriated the proceeds. He further claims to have found newly discovered information to support a finding that O'Donnell

---

[1] The Settlement Statement from Skinner Auctions, listing each item and its sale price, were attached as Exhibit 2 to the Appellee's Brief. *See* Docket No. 13-1.
[2] Robert assigned his claim in to Armistead on May 6, 2016. Bankr. Case No. 10-41302, Docket No. 769.

2

committed perjury numerous times, as well as theft, fraud, and embezzlement. By way of example, he maintains that O'Donnell

> did not account for funds in his Last and Final Accounting belonging to the Debtor from Skinner Auctions, that were taken by O'Donnell and given to Attorney Anastasi, attorney for John Farnsworth, who after substantial litigation in the bankruptcy court was found not to be a creditor of the Debtor….The Appellant is entitled to an evidentiary hearing to determine if, Farnsworth's attorney was entitled to receive any of the funds belonging to the Debtor and if O'Donnell, in his capacity as Receiver of Na-Mor Inc. conspired with Anastasi to misappropriate the funds of the Debtor….

Appellant's Brief at p.6. In the same vein, Armistead offers a handful of other examples of assets belonging to the Debtor that he contends O'Donnell failed to disclose in his Final Accounting, however, Armistead points to no documentary evidence to support that the specific assets he mentions are or were, in fact, property of the Debtor.[3]

Armistead also takes issue with Trustee Collins, who did not oppose O'Donnell's Final Accounting, and who moved to abandon assets of the Debtor that related in any way to the Receivership or any transactions involving O'Donnell. Trustee Collins asserted that any such property was "burdensome to the Estate in that it continues to be the source of multiple motions and pleadings that have had the effect of diminishing assets available to creditors of the Estate," and cited numerous actions taken by Armistead's predecessor in interest, Robert Dziurgot, throughout the case, attacking O'Donnell, including the filing of several motions, which were routinely denied. Bankr. Case No. 10-41302, Docket No. 736. On December 18, 2015, the bankruptcy judge authorized the Trustee and the Na-Mor, Inc. Bankruptcy Estate to abandon

---

[3] On review of the bankruptcy court filings, only two of the six instances of "newly discovered evidence" that Armistead details in his briefing were presented to the bankruptcy court in support of his motion and request for evidentiary hearing: 1) the $16,729.60 in proceeds from a 2009 auction at Skinner Auction house, and 2) a $30,000 distribution from Clinton Savings Bank. *See* Bankr. Case No. 10-41302, Docket Nos. 797 and 800.

3

certain legal and equitable claims that arose from or were related to the Receivership, or transactions involving O'Donnell. Bankr. Case No. 10-41302, Docket No. 760.

On August 15, 2016, Armistead filed with the Bankruptcy Court the Motion to Show Cause, and requested an evidentiary hearing on newly found evidence pursuant to Fed. R. Bankr. 2004. On September 22, 2017, the Bankruptcy Court denied Armistead's motion and his request for an evidentiary hearing. This appeal followed.

## **Discussion**

This Court reviews a bankruptcy court's legal conclusions *de novo*, and findings of fact for clear error. *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997). The denial of Armistead's Motion to Show Cause is reviewed for abuse of discretion. *See, e.g., Rosado v. Banco Popular de Puerto Rico*, 561 B.R. 598, 604 (B.A.P. 1st Cir. 2017) (order on motion for contempt is reviewed for abuse of discretion); *In re 1095 Commonwealth Corp.*, 236 B.R. 530, 535 (D. Mass. 1999) (order on a motion for sanctions is reviewed for an abuse of discretion).

A review of the record shows that this most recent motion by Armistead is one in a long list of actions taken against O'Donnell, throughout the pendency of the bankruptcy case, including multiple motions for contempt and sanctions, a motion to compel the deposition of O'Donnell, a motion requesting the bankruptcy judge to take judicial notice of the filing of false information, a motion seeking derivative standing to sue O'Donnell, a motion to file summary judgment against O'Donnell, and a motion for leave to file an Adversary Proceeding – all denied. *See, e.g.*, Bankr. Case No. 10-41302, Docket Nos. 601, 602, 603, 604, 609, 610, 620, 626, 627, 629, 727, 637, 652, 653, 654, 664, 677, 678, 697, 698, 720, 721, 732, and 752. Clearly, the bankruptcy court is aware of issues regarding O'Donnell's Receivership, which has been under attack and review for many years, first by Armistead's predecessor in interest, and now by Armistead. The abundant motions

4

similar to the one on appeal is what obliged the Trustee to abandon property related to claims as to O'Donnell or his Receivership. Moreover, in O'Donnell's Opposition to Armistead's Motion to Show Cause, he provided documentation to the Bankruptcy Court to support that assets Armistead identified as belonging to the Debtor did not actually belong to the Debtor, and thus were properly excluded from O'Donnell's Final Accounting. Bankr. Case No. 10-41302, Docket No. 808. Such documentary evidence provided ample support for the bankruptcy judge's order denying Armistead's motion. Accordingly, this Court finds the Bankruptcy Court did not abuse its discretion in denying Armistead's latest motion.

In addition, the Bankruptcy Court's acceptance of O'Donnell's Final Accounting concern questions of fact, including which assets did or did not belong to the Debtor. Factual determinations are reviewed for clear error. After examining the documents presented, this Court finds no such clear error. For example, Armistead asserts that $16,729.60 from the Skinner Auction sale is part of the Debtor's estate, but the Appellee provided the Settlement Statement from Skinner Auction house identifying a list of personal items that appear to belong to Cynthia, which were auctioned nearly a year before the filing of the Debtor's bankruptcy petition. *See* Docket No. 13-1, Ex. 2. Armistead fails to show how or where the court erred in finding that the listed items were not the property of Na-Mor, Inc. This Court also finds no clear error by the Bankruptcy Court in finding that O'Donnell's Final Accounting was accurate insofar as it omitted items that were not, in fact, property of the Debtor.

With regards to the evidentiary hearing, "[t]he bankruptcy court has the discretion to decide an issue without holding an evidentiary hearing," and the denial of a request for such hearing is reviewed for abuse of discretion. *In re Garcia*, 532 B.R. 173, 182 (B.A.P. 1st Cir. 2015) (quoting *Rockstone Capital LLC v. Metal*, 508 B.R. 552, 558 (E.D.N.Y.2014)). "A bankruptcy judge 'does

5

not abuse her discretion in reaching a decision without holding an evidentiary hearing where the record provided ample evidence on which the court could make such a decision.'" *Id.* (quoting *Rockstone*, 508 B.R. at 559).

While Armistead claimed "newly discovered" evidence in his filings with the Bankruptcy Court, his submissions were conclusory accusations lacking sufficient documentary support. Further, given the scope and length of the six year history of these proceedings, it seems reasonable that the bankruptcy court would have sufficient facts before it to determine that an evidentiary hearing was unnecessary, and thus this Court finds that there was no abuse of discretion in denying Armistead's request. To the extent the denial of the evidentiary hearing was based in part on the Bankruptcy judge's findings of fact as to the accuracy of the Accounting, such findings are reviewed for clear error, and as discussed above, this court finds no clear error.

## Conclusion

For the reasons set forth above, the Order of the Bankruptcy Court is *__affirmed__*.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**